**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**KARRA M. BARRETT,**

                              **Plaintiff,**

            **-v-**                                            **18-CV-1425JLS(Sr)**

**NEW YORK STATE,**
**OFFICE FOR PEOPLE WITH**
**DEVELOPMENTAL DISABILITIES,**

                              **Defendant.**
_____


### REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. John L. Sinatra,

pursuant to 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon

dispositive motions. Dkt. #8.


        Currently before the Court is defendant's motion to dismiss plaintiff's

complaint (Dkt. #5), and plaintiff's motion to amend her complaint to add Dr. Theodore

Kastner, Commissioner of the New York State Office for People with Developmental

Disabilities ("NYSOPWDD"), in his official capacity ("Commissioner"), as a defendant in

this action. Dkt. #9.  For the following reasons, it is recommended that defendant's

motion to dismiss be granted and plaintiff's motion to amend her complaint be granted

in part.

## BACKGROUND

Plaintiff commenced employment with the NYSOPWDD as a Direct Support Assistant on January 9, 2014. Dkt. #15, ¶ 9. Since at least 2017, plaintiff has suffered with major depressive disorder and generalized anxiety disorder. Dkt. #15, ¶ 10. Plaintiff alleges that these conditions substantially impact her ability to interact with others, regulate her emotions and care for herself and her son. Dkt. #15, ¶ 11. Any disturbance in plaintiff's schedule which interferes with her personal life or her son's life increases her anxiety and depression. Dkt. #15, ¶ 11.

Plaintiff alleges that she was issued a disciplinary notice on March 29, 2017 for taking leave due to her generalized anxiety disorder and major depressive disorder. Dkt. #1, ¶ 19. Plaintiff informed her employer of her depression and anxiety on April 27, 2017, when she requested, and was granted, time off pursuant to the Family and Medical Leave Act ("FMLA"), to treat her serious health condition. Dkt. #1, ¶ 21; Dkt. #9-1, ¶ 11; Dkt. #14, ¶ 4 & Dkt. #15, ¶ 13.

Beginning in July of 2017, plaintiff applied for several higher level positions with defendant, including Habilitation Specialist I and Qualified Intellectual Disability Professional, but was not offered any of these positions despite her educational credentials, good score on the civil service examination that measured qualifications for such positions, work experience, and recommendations from colleagues. Dkt. #15, ¶¶ 15-23.

On December 1, 2017, plaintiff was informed that effective December 12, 2017, her work schedule would change from 7:00am-11:00am to 6:00am-10:00am. Dkt. #15, ¶ 24. Plaintiff alleges that defendants were aware that she was a single mother and could not start work at that time because her child's daycare did not open until 6:30am. Dkt. #15, ¶ 25. Plaintiff complained to her employer that the schedule change would have a severe impact on her family life and her disability. Dkt. #15, ¶ 27.

When plaintiff arrived to work on her next scheduled work day, December 4, 2017, she was informed that she was being placed on involuntary leave pursuant to New York Civil Service Law § 72.5.[1] Dkt. #1, ¶ 19 & Dkt. #15, ¶ 29.

On January 3, 2018, plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), alleging disability discrimination based upon her diagnosis of depression and anxiety; failure to promote; and placement on involuntary leave of absence in retaliation for a call to the U.S. Department of Labor. Dkt. #15, ¶ 30 & p.15. In her charge of discrimination, plaintiff recounts that she was placed on involuntary leave by letter indicating that she was perceived to be a danger to

---

[1] New York Civil Service Law § 72(5) provides that "if the appointing authority determines that there is probable cause to believe that the continued presence of the employee on the job represents a potential danger to persons or property or would severely interfere with operations, it may place such employee on involuntary leave of absence immediately; provided, however that the employee shall be entitled to draw all accumulated unused sick leave, vacation, overtime and other time allowances standing to his or her credit. If such an employee is finally determined not to be physically or mentally unfit to perform the duties of his or her position, he or she shall be restored to his or her position and shall have any leave credits or salary that he or she may have lost because of such involuntary leave of absence restored to him or her less any compensation he or she may have earned in other employment or occupation and any unemployment benefits he or she may have received during such period."

others and to be exhibiting suicidal thoughts in the workplace. Dkt. #15, pp.16-18.

Plaintiff complains that she was placed on leave due to her use of the FMLA and in

retaliation for her complaint to the U.S. Department of Labor challenging defendant's

refusal to remove a notice of FMLA related discipline from her personal history folder.

Dkt. #15, p.18.

In March of 2018, plaintiff requested relocation to a position with a shift

commencing at 7:00am as an accommodation of her disability because her new

schedule commencing at 6:00am was causing her a great deal of stress and negatively

impacting her ability to care for her son, thereby worsening her anxiety and depression

and negatively impacting her ability to care for herself. Dkt. #1, ¶¶ 222-23 & Dkt. #15,

¶ 31. Defendants allegedly rejected plaintiff's request and failed to engage in

discussions with plaintiff regarding the possibility of accommodation. Dkt. #15, ¶ 31.

Plaintiff began long-term disability leave on June 28, 2018. Dkt. #15, ¶ 32.

On June 28, 2018, the NYSDHR issued a Determination and Order After

Investigation finding No Probable Cause to believe the NYSOPWDD engaged in

discrimination against plaintiff. Dkt. #1, p.14. The NYSDHR determined that plaintiff was

placed on involuntary leave of absence on December 4, 2017 after she threatened to

commit suicide in front of her coworkers. Dkt. #15, p.14. The NYSDHR acknowledged

that plaintiff was approved for FMLA leave on April 27, 2017 when she had completed

enough work hours to qualify for such leave and determined that there was no evidence

that plaintiff suffered any adverse employment action between then and her placement on involuntary leave. Dkt. #1. p.15. The U.S. Equal Employment Opportunity Commission ("EEOC"), adopted the findings of the NYSDHR and issued a Notice of Suit Rights on September 24, 2018. Dkt. #15, p.21.

Plaintiff commenced this action, *pro se*, on December 6, 2018, alleging failure to promote and failure to provide reasonable accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). Dkt. #1.

Plaintiff was terminated in June of 2019. Dkt. #15, ¶ 34.

Plaintiff was granted leave to proceed in *forma pauperis* and a Summons was served on the NYSOPWDD on September 13, 2019. Dkt. #4.

The NYSOPWDD moved to dismiss plaintiff's complaint for lack of jurisdiction on October 23, 2019. Dkt. #5.

On December 30, 2019, plaintiff moved to amend her complaint  to add the Commissioner as a defendant and to add claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq*. Dkt. #9.  Plaintiff submitted a second proposed amended complaint on January 22, 2020. Dkt. #15. Plaintiff alleges that she was subjected to disparate treatment by defendant's failure to promote her;

that defendant failed to accommodate her disability and terminated her because of her disability; and that defendant retaliated against her by maintaining her on involuntary leave and then terminating her employment following her complaints of discrimination and request for accommodation. Dkt. #15, ¶¶ 36, 42 & 46.

## DISCUSSION AND ANALYSIS

### Fed. R. Civ. P. 12(b)(1)

Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dkt. #5. Specifically, defendant argues that plaintiff's claims against a state agency are barred by sovereign immunity. Dkt. #5, pp.4-7.

Plaintiff responds that she was unaware of the Eleventh Amendment bar. Dkt. #8, pp.1-2.

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it. *Markarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To defeat a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Id.*

As a general rule, state governments and their agencies, such as the NYSOPWDD, may not be sued in federal court unless they have waived the sovereign

immunity afforded them by the Eleventh Amendment to the United States Constitution or there has been a valid abrogation of that immunity by Congress. *Woods v. Roundout Valley Cent. Sch. Dist. Bd. of Educ*., 466 F.3d 232, 236 (2d Cir. 2006); *Hamzik v. Office for People with Dev. Disabilities*, 859 F. Supp.2d 265, 275-76 (N.D.N.Y. 2012). Title I of the ADA, which governs individual claims of discrimination in employment on the basis of disability, does not abrogate the states' sovereign immunity. *Baez v. New York*, 56 F. Supp.3d 456, 464 (S.D.N.Y. 2014), *aff'd* 629 Fed. App'x 116, 118 (2d Cir. 2015); *Hamzik,* 859 F. Supp.2d at 276. Accordingly, plaintiff's ADA claims against the NYSOPWDD must be dismissed for lack of subject-matter jurisdiction. *Id.; Hamzik,* 859 F. Supp.2d at 276.  Because "New York has not consented to be sued in federal court under its human rights laws," these claims must be dismissed as well. *Id.; Hamzik,* 859 F. Supp.2d at 276.  Accordingly, it is recommended that plaintiff's complaint be dismissed, without prejudice, for lack of subject matter jurisdiction. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (12(b)(1) dismissal for lack of federal subject matter jurisdiction must be without prejudice).

### Motion to Amend

Plaintiff moves for leave to amend the complaint to add the Commissioner as a party to this action, seeking prospective injunctive relief against him under the ADA, *to wit*, reinstatement and promotion. Dkt. #8, pp.1 & 4-8. Plaintiff also seeks to add ADA claims for wrongful termination and retaliation. Dkt. #8, p.8. Finally, plaintiff seeks to add claims of failure to accommodate, failure to promote, wrongful termination and retaliation under the Rehabilitation Act. Dkt. #8, pp.8-10.

Defendant argues that the motion to amend should be denied as futile. Dkt. #12. Specifically, defendant argues that plaintiff has failed to adequately plead a qualifying disability. Dkt. #12, p.8. More specifically, defendant argues that plaintiff failed to allege any facts to suggest that a major life activity is substantially limited by her major depressive disorder and generalized anxiety disorder. Dkt. #12, p.10. Finally, defendant argues that plaintiff fails to plead a plausible retaliation claim under the Rehabilitation Act. Dkt. #12, p.11. Specifically, defendant argues that the time between the filing of this complaint on December 6, 2018 and her termination in June of 2019 is too great to infer a causal link. Dkt. #12, p.12. Defendant also notes that plaintiff was terminated before NYSOPWDD was served with the complaint on September 11, 2019. Dkt. #12, p.13. In the event that any claims are allowed to proceed, defendant argues that punitive damages are not available under Rehabilitation Act. Dkt. #12, p.14.

<u>Legal Standard for Amendment</u>

Fed. R. Civ. P. 21 provides that "the court may at any time, on just terms, add . . . a party."  In deciding whether to permit the addition of defendants, courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15. *Addison v. Reitman Blacktop, Inc*., 283 F.R.D. 74, 79 (E.D.N.Y. 2011). Fed. R. Civ. P. 15(a) provides that a party may amend a pleading with the opposing party's written consent or the court's leave, which is to be given freely when justice so requires. Leave to amend should be granted unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile. *Foman v. Davis,*

371 U.S. 178, 182 (1962); *State Teachers Ret. Bd. v. Fluor Corp*., 654 F.2d 843, 856 (2d Cir. 1981); Fed. R. Civ. P.15(a). An amendment is futile if it cannot survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 339 (2d Cir. 2000).

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S.at 679.

When considering motions to dismiss the claims of plaintiffs proceeding *pro se*, courts construe the pleadings liberally, reading such submissions to raise the strongest arguments they suggest. *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). A *pro se* litigant should be afforded every reasonable opportunity to demonstrate that she has a valid claim. *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

In the context of employment discrimination, the complaint need not contain specific facts to establish a *prima facie* case of discrimination, but must allege enough facts to state a claim to relief that is plausible on its face. *Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision,* 16 F. Supp.3d 221, 226-27 (W.D.N.Y. 2014). However, the elements of a *prima facie* case provide an outline of what is necessary to render plaintiff's claims plausible and may, therefore, be considered in assessing whether there is sufficient factual matter in the complaint which, if true, provides the defendant with fair notice of plaintiff's claim, and the grounds on which it rests. *Kelly v. New York State Office of Mental Health,* 200 F. Supp.3d 378, 389 (E.D.N.Y. 2016).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc*., 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A Court may take judicial notice of an EEOC charge and agency determination. *Muhammad v. New York City Transit Auth.,* 450 F. Supp.2d 198, 204-05 (E.D.N.Y. 2006); *See Hughes v. Xerox Corp*., 37 F. Supp.3d 629, 636-37 (W.D.N.Y. 2014) ("While matters outside the

-10-

four corners of a complaint are not typically relevant on a motion to dismiss, materials

that are expressly referenced in the complaint and submitted by the parties in

connection with the underlying motion, such as the EEOC charge and DHR complaint .

. . may be considered by the Court.").

<u>Disability Discrimination</u>

Title I of the ADA provides that "[n]o covered entity shall discriminate

against a qualified individual on the basis of disability in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a). Section 504 of the Rehabilitation Act provides that "[n]o

otherwise qualified individual with a disability in the United States . . . shall, solely by

reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." 29 U.S.C. § 794(a). Aside from the fact that the

Rehabilitation Act only covers federally funded entities,[2] the statute imposes the same

requirements and is analyzed under the same legal standards as claims brought

pursuant to the ADA. *Cerpac v. Health & Hosps. Corp*., 147 F.3d 165, 167 (2d Cir.

1998); *See Frederick v. State*, 449 F. Supp.3d 115, 124-25 (W.D.N.Y. 2020) (Although

the Rehabilitation Act proscribes discrimination "solely by reason of . . . disability," while

---

[2] Although plaintiff's second amended complaint fails to allege that the NYSOPWDD receives federal funds, plaintiff's affidavit cites the New York State Budget as evidence of federal funding for the NYSOPWDD. Dkt. #14, ¶ 9.

Title I of the ADA prohibits discrimination in employment on the "basis of disability," the causation standards with respect to employment discrimination claims are the same under both statutes).

Disability is defined under both the ADA and the Rehabilitation Act as: (1) a physical or mental impairment which substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such impairment. 29 U.S.C. § 705(2)(B) & 42 U.S.C. § 12101(2). In evaluating whether an individual is substantially limited in a major life activity, the Court considers: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment. 29 C.F.R. § 1630.2(j)(2). "[S]tress and depression are conditions that may or may not be considered impairments, depending on whether these conditions result from a documented physiological or mental disorder." *Laface v. Eastern Suffolk Boces*, 349 F. Supp.3d 126, 146 (E.D.N.Y. 2018) (internal quotation omitted). Major life activities are those activities that are of central importance to daily life, such as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working. *Id.* The term "substantially limits" is construed broadly in favor of expansive coverage and is not meant to be a demanding standard. *Kelly*, 200 F. Supp.3d at 392, *citing* 29 C.F.R. § 1630.2(j)(1)(i). An impairment is a disability if it substantially limits the ability of an individual to perform a major life

activity as compared to most people in the general population. *Id.* at 393, *citing* 29 C.F.R. § 1630.2(j)(1)(ii).

Plaintiff has plausibly alleged that she suffers from mental impairments which substantially limit her ability to care for herself and her child and her ability to work and that she informed her employer of such impairment on April 27, 2017 in her request for FMLA leave. Moreover, plaintiff plausibly alleges that within several months of that disclosure, she applied for but was not promoted to several positions for which she was qualified based upon her education credentials, score on the civil service exam and work experience and for which she was recommended by colleagues. The Court finds these facts sufficient to plausibly allege an inference of discrimination for purposes of a failure to promote claim. *See McDonald v. City of N.Y.*, 786 F. Supp.2d 588, 613 (E.D.N.Y. 2011), *citing Brower v. Continental Airlines*, Inc., 62 F. Supp.2d 896, 905 (E.D.N.Y. 1999) (To establish *prima facie* claim of failure to promote due to disability discrimination, a plaintiff must establish that: (1) she was disabled; (2) she applied for positions for which she was qualified; (3) she was not promoted; and (4) the failure to promote was under circumstances giving rise to an inference of discrimination).

Plaintiff alleges that she informed defendant of her disability again in March of 2018 when she requested relocation to a position with a shift commencing at 7:00am. A reasonable accommodation may include schedule modification. *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009), *citing* 42 U.S.C.

-13-

§ 12111(9)(B). Plaintiff states that she was capable of performing her job within the 7:00am-11:00am shift, but defendant refused to continue that schedule, which is sufficient to plausibly allege a cause of action for failure to accommodate. *See Lee v. Saul*, 2020 WL 7029264, at *3 (S.D.N.Y. Aug. 31, 2020) (To establish *prima facie* claim of failure to accommodate, a plaintiff must establish that: (1) she is an individual who has a disability; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of her position; and (4) the employer has refused to make such accommodations). Moreover, plaintiff has plausibly alleged that her termination was the result of defendant's refusal to accommodate her request for a 7:00am start time. Accordingly, it is recommended that plaintiff's claims of failure to accommodate and termination due to disability proceed to discovery.

Retaliation

The ADA makes it unlawful for an employer to discriminate against any individual because such individual has opposed any act or practice made unlawful by the statute or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the statute. 42 U.S.C. § 12203(a). The Rehabilitation Act prohibits an employer from discriminating against any individual because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the Act. 29 U.S.C. § 794(d). The elements of a retaliation claim under the Rehabilitation Act are the same as the ADA and are analyzed using the same framework employed in Title VII

-14-

cases. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). As a result, to establish a prima facie case of retaliation, a plaintiff must establish that: (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Id.* "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination, and may take the form of either formal or informal complaints." *Brizzi v. Utica Mut. Ins. Co.,* 529 F. Supp.3d 44, 56 (E.D.N.Y. 2021)(internal quotations omitted). Requesting a reasonable accommodation for a disability constitutes protected activity. *Weixel v. Board of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002). For retaliation claims, an adverse employment action is defined as one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). This definition is broader than the standard for claims of discrimination in that an adverse employment action for purposes of retaliation claims need not affect the terms and conditions of employment. *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 90 (2d Cir. 2015). "Material adversity is to be determined objectively, based on the reactions of a reasonable employee." *Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556, 568 (2d Cir. 2011). The causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001). "Adverse actions that predate protected conduct cannot form the basis of a retaliation claim." *Williams v. Smith*, No. 9:11-CV-601, 2015 WL 1179339, at *11 (N.D.N.Y. Mar. 13, 2015).

Although defendant is correct that plaintiff was terminated before defendant was served with this lawsuit, plaintiff has plausibly alleged other protected activity, *to wit*, her continuing requests for accommodation of her disability by affording her a later start time. Moreover, plaintiff has plausibly alleged that the denial of promotion to other positions for which she was qualified occurred within proximity to her complaint about denial of FMLA leave and continued after the filing of her charge of discrimination with the NYSDHR. Accordingly, it is recommended that plaintiff be granted leave to amend her complaint to allege retaliatory denial of promotion, refusal to accommodate and termination under the ADA and Rehabilitation Act.

Damages

Because a suit against a state official in his official capacity is deemed to be a suit against the state itself, the Eleventh Amendment also bars claims for money damages against state officials acting in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *Murray v. Tanea*, 357 F. Supp.3d 226, 230 (W.D.N.Y. 2019).  However, under the exception set forth in *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity for prospective, injunctive relief from violations of federal law regardless of the sovereignty afforded states under the  Eleventh Amendment. *Soloviev v. Goldstein*, 104 F. Supp.3d 232, 244 (E.D.N.Y. 2015). Claims for reinstatement of employment brought against officials with the authority to provide the relief requested satisfy this exception. *Id.* Thus, while monetary damages are unavailable to plaintiff under the ADA, plaintiff could obtain prospective injunctive relief against the Commissioner if she succeeds on her claims of disability

-16-

discrimination or retaliation under the ADA. In any event, assuming that New York has waived its sovereign immunity by acceptance of federal funds under the Rehabilitation Act, plaintiff could obtain money damages against the Commissioner on her claims of disability discrimination or retaliation under the Rehabilitation Act. *See T.W. v. New York State Board of Law Examiners,* 996 F.3d 87, 91-93 (2d Cir. 2021) (discussing Rehabilitation Act's waiver of sovereign immunity), *citing* 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."). However, punitive damages may not be awarded in private lawsuits brought under either the ADA or the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss plaintiff's complaint (Dkt. #5), be granted without prejudice and that plaintiff's motion to amend her complaint (Dkt. #9), be granted in so far as it seeks to add Dr. Theodore Kastner, Commissioner of the New York State Office for People with Developmental Disabilities, in his official capacity, as a defendant in this action seeking prospective injunctive relief for failure to promote, failure to accommodate, termination and retaliation because of disability in violation of the ADA, as well as monetary damages for failure to promote, failure to accommodate, termination and retaliation because of disability in violation of the  Rehabilitation Act.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to

comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:         Buffalo, New York
               February 1, 2022

                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**